UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KETAB CORP., | ) | 2:14-cv-07241-RSWL (MRW) |
| Plaintiff, | ) | |
| vs. | ) | **ORDER re: Mesriani Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [108] |
| MESRIANI & ASSOCIATES, RODNEY MESRIANI, SEYED ALI LIMONADI, ALI LIMONADI, STUDIO CINEGRAPHIC LOS ANGELES dba IRTV, MELLI YELLOW PAGES, INC., and DOES 1 through 10, inclusive, | ) | |
| Defendants. | ) | |

Currently before the Court is Defendants Mesriani & Associates and Rodney Mesriani's (collectively, "Mesriani Defendants") Motion to Dismiss [108] Plaintiff Ketab Corp.'s ("Plaintiff" or "Ketab") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Mesriani Defendants request dismissal with prejudice of the three remaining claims

1

asserted against them.

Upon review of all papers submitted and pertaining to this Motion [108], the Court **GRANTS** Mesriani Defendants' Motion to Dismiss [108] in its entirety.

## I. BACKGROUND

**A.   <u>Factual Background</u>**

Plaintiff's action alleges various claims related to trademark infringement against five named defendants: Mesriani & Associates, Rodney Mesriani, Seyed Ali Limonadi, Studio Cinegraphic Los Angeles, and Melli Yellow Pages, Inc.  Second Amend. Compl. ("SAC"), ECF No. 106.

Plaintiff Ketab Corp. is a California corporation located in Los Angeles.  SAC ¶¶ 4, 12.  Defendant Mesriani & Associates is a law firm located in Los Angeles.  SAC ¶ 5; Mesriani Defs.' Mot. Dismiss FAC 1:6, ECF No. 64.  Defendant Rodney Mesriani is allegedly a principal of Mesriani & Associates who resides in Los Angeles.  SAC ¶ 9.

Plaintiff alleges that since 1981, Plaintiff has been in the business of providing "directory and marketing services" "to the Iranian community . . . around the world," including in Southern California, "who live outside of Iran."  SAC ¶ 12.  Plaintiff alleges it uses "several trade names and marks to identify its services," including in relevant part an "08" mark and "combinations of the '08' mark."  <u>Id.</u> Plaintiff's "08" mark is a federally registered design

mark that consists of the numbers "08" placed in a dark rectangular box overlaid with horizontal lines that resemble closed shutters.  See id., Ex. 1 (Registration No. 3,271,704).  Plaintiff does not specifically identify the alleged marks that it terms "combinations of the '08' mark," and Plaintiff does not provide any examples or images of any marks that combine anything with its registered "08" design mark.  Plaintiff does allege that it uses a telephone number (818-908-0808) and an internet domain name (www.08.net) that contain the numbers "08."  Id. ¶ 12.

Plaintiff alleges that Mesriani Defendants used trademarks that contained the numbers "08" in an advertisement for the Mesriani & Associates law firm. Id. ¶ 36.  Specifically, Plaintiff alleges that Mesriani Defendants used "a phone number mark" (818-808-0808) and a "domain name mark" (www.08law.net) in Defendant's "advertising and marketing" of the Mesriani law firm.  Id.

On these facts and others, Plaintiff alleges the following three claims against Mesriani Defendants:

(1) Federal Trademark Dilution, in violation of 15 U.S.C. § 1125(c), SAC ¶¶ 79-86;

(2) Intentional Interference with Economic Relations, in violation of California law, SAC ¶¶ 104-111; and

(3) Negligent Interference with Economic Relations, in violation of California law, SAC ¶¶ 112-119.

Mesriani Defendants move to dismiss with prejudice all three claims asserted against them.

**B.  <u>Procedural Background</u>**

Plaintiff filed its Complaint [1] on September 16, 2014.  On November 7, 2014, Mesriani Defendants filed their first Motion to Dismiss [29].  The Court granted [42] Mesriani Defendant's Motion to Dismiss in its entirety but granted Plaintiff leave to amend the three claims presently alleged.  Plaintiff filed a First Amended Complaint [53], <u>see</u> Dckt. # 59, and on March 14, 2015, Mesriani Defendants filed a Motion to Dismiss Plaintiff's FAC [64], which the Court granted [100].  The Court again granted Plaintiff leave to amend the three claims presently alleged.  <u>See</u> Dckt. # 100.

On May 22, 2015, Plaintiff filed its Second Amended Complaint ("SAC") [106].  On June 5, 2015, Mesriani Defendants filed the present Motion to Dismiss Second Amended Complaint [108].  The Opposition [122] and Reply [125] were timely filed.  The present Motion to Dismiss [108] was set for hearing on July 7, 2015, and was taken under submission on July 1, 2015 [130].

**II. LEGAL STANDARD**

**A.  <u>Rule 12(b)(6) Motion to Dismiss</u>**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal can be based on a "lack of a cognizable legal theory or

the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The question presented by a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual grounds to support a plausible claim to relief, thereby entitling the plaintiff to offer evidence in support of its claim.  <u>Iqbal</u>, 556 U.S. at 678; <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002).

### III. DISCUSSION

**A.   <u>Requests for Judicial Notice</u>**

Rule 201 of the Federal Rules of Evidence states that the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Generally, when "'ruling on a Rule 12(b)(6) motion,'" "'a district court may not consider any material beyond the pleadings.'"  <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688 (9th Cir. 2001).  However, two exceptions exist.  <u>Id.</u>  First, "a court may consider

'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment," and if the documents are not physically attached to the complaint, "they may be considered if the documents' authenticity is not contested and [if] the plaintiff's complaint necessarily relies on them." Id. (internal quotation marks and alterations omitted). Second, "a court may take judicial notice of 'matters of public record'" under Federal Rule of Evidence 201. Id.

### 1.   Defendants' Request for Judicial Notice

Mesriani Defendants request that the Court take judicial notice of seven items of evidence.  Def.'s Requ. Judicial Notice, ECF No. 110.  Because the Court need not rely on any of the seven exhibits to determine the present Motion, the Court **DENIES AS MOOT** Plaintiff's Request for Judicial Notice.  See Rouse v. Conner, No. C 12-2121 PJH, 2012 WL 2589240, at *1 (N.D. Cal. July 3, 2012) ("[T]he court may deny a request for judicial notice of facts that are not relevant to the question at issue.").

### 2.   Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of the following evidence:

(1) USPTO Status Page for the "08" design mark, serial number 78732086, see Pl.'s Requ. Judicial Notice, Ex. A, ECF No. 123;

(2) USPTO Registration cancellation of the "08" design mark, serial number 7469633, <u>see</u> <u>id.</u> Ex. B;

(3) USPTO Status Page for the "Logo Mark" trademark, serial number 78732086, <u>see</u> <u>id.</u> Ex. C; and

(4) USPTO Status Page for the "Logo Mark," serial number 78732094, <u>see</u> <u>id.</u> Ex. C.

Because Exhibits B and C are irrelevant to determining the present Motion, the Court **DENIES AS MOOT** Plaintiff's Request for judicial notice of Exhibits B and C.  <u>See</u> <u>Rouse</u>, 2012 WL 2589240, at *1.

Because Exhibit A "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and is a "matter of public record," <u>Lee</u>, 250 F.3d at 688, the Court **GRANTS** Plaintiff's Request and takes judicial notice of the fact and content of Exhibit A.

**B.   <u>Mesriani Defendants' Motion to Dismiss</u>**

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) can be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri</u>, 901 F.2d at 699.  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks omitted).

1.   <u>Dilution of a Famous Mark Claim</u>

Section 42(c) of the Lanham Act states that "[s]ubject to the principles of equity, the owner of a

famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."  15 U.S.C. § 1125(c)(1).

To state a claim for dilution of a famous mark, a plaintiff must show that 1) the mark is famous; 2) the defendant is using a diluting mark "in connection with" the sale of goods or services; 3) the defendant's use of the mark began after the mark became famous; and 4) the defendant's use of the mark either a) "impairs the [mark's] distinctiveness" or b) "harms the reputation of the famous mark."  15 U.S.C. § 1125(c); <u>Panavision v. Toeppen</u>, 141 F.3d 1316, 1324 (9th Cir. 1998).

///

///

///

///

a.  *Famous Mark Element*[1]

A "famous mark" is defined as a mark that is

---

[1] Though the Court previously stated in its February 6, 2015, Order [42] that Plaintiff's allegations were sufficient to allege a famous mark, the Court reconsiders that determination based on the persuasive arguments of the parties and a review of relevant case law.

"widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1225(c)(2)(A); Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1096 (N.D. Cal. 2014).

Under Ninth Circuit case law, "trademark dilution claims are restricted to truly famous marks, such as Budweiser beer . . . and Barbie dolls." Dahon N. Am., Inc. v. Hon, No. 2:11-cv-05835-ODW (JCGx), 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012); see Fruit of the Loom, Inc. v. Girouard, 994 F.2d 1359, 1362-63 (9th Cir. 1993). The Ninth Circuit has explained that "[d]ilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). In other words, a federal trademark dilution statute "tread[s] very close to granting 'rights in gross' in a trademark." Id. "Therefore, to meet the 'famousness' element of protection under the dilution statutes, a mark must be truly prominent and renowned." Id. (internal quotation marks and alterations omitted).

Here, Plaintiff's strongest allegations for a famous mark are its allegations regarding its "08" design mark (Registration No. 3,271,704), which is presumptively distinctive because it is a registered mark. See id. But Plaintiff's allegations for any of

its alleged marks do not rise above the level of distinctiveness, and mere distinctiveness is not enough to support a finding of famousness.  Id. ("If dilution protection were accorded to trademarks based only on a showing of inherent or acquired distinctiveness, we would upset the balance in favor of over-protecting trademarks, at the expense of potential non-infringing uses."); see SAC ¶¶ 81-83 (alleging that all of "the KETAB MARKS" are famous without identifying any specific mark).

It is obvious that Plaintiff's "08" design mark, as well as Plaintiff's "08" phone number and "08" website or any other "mark" alleged by Plaintiff, does not rise to the level of famousness required by Ninth Circuit case law.  Plaintiff has not pled any facts, beyond conclusory allegations, that would support a plausible assertion of famousness.  See Fruit of the Loom, 994 F.2d at 1363 (noting that a famous mark must be "a famous American trademark" "in the class of "TIFFANY, POLAROID, ROLLS ROYCE, and KODAK"); see also Avery Dennison, 189 F.3d at 876 (finding that the "Avery" and "Dennison" trademarks, though likely distinctive, were not, as a matter of law, famous for purposes of a trademark dilution claim).  Plaintiff's "08" design mark and the other alleged "08" marks are "by no means as distinctive as . . . 'Polaroid' or 'Kodak,'" and "it strains the intellect to imagine how [Plaintiff] . . . might . . . convince the Court otherwise."  Metro Pub.,

Ltd. v. San Jose Mercury News, Inc., 861 F. Supp. 870, 880-81 (N.D. Cal. 1994).  Just as the Court in Metro Publishing reasoned, if Plaintiff were to prevail on this claim, "the use of the innocuous, everyday" number combination of "08" "would become forbidden," and "[s]uch a result would make little sense."  Id. at 881. As such, Plaintiff fails to allege the famousness element of its dilution claim.

### b.  *Dilution Element*

Additionally, Plaintiff must also plead facts that plausibly show that Defendants' alleged conduct impaired the distinctiveness, or harmed the reputation, of Plaintiff's famous mark.  U.S.C. § 1125(c); Panavision, 141 F.3d at 1324.

To "impair the distinctiveness" of a famous mark means to "diminish the capacity of the mark to identify and distinguish goods and services."  Panavision, 141 F.3d at 1324.  The facts alleged by Plaintiff to support this element are that (1) "Ketab started to receive calls from its customers and members claiming that [the customers] . . . called Defendants' 08 phone number believing that they were calling Ketab, . . . and were upset and confused when they realized that Defendants were not affiliated with Ketab"; (2) "Defendants' use of the marks . . . created confusion in the public" because "customers were unable to tell whether they were contacting Ketab or Defendants or whether Ketab and Defendants were one and the same";

and (3) Plaintiff has "seen a reduction in its business since the Defendants began to use [the alleged] marks . . . , which can only be attributed to the Defendants['] actions."  SAC ¶ 84.

Such allegations do not plausibly show dilution of a famous mark.  Merely because customers mistakenly dialed Defendants' phone number (818-808-0808) rather than Plaintiff's phone number (818-908-0808) is not evidence that the distinctiveness of any of Plaintiff's alleged "08" marks, including its "08" design mark, have been impaired or that the alleged marks' reputations have been harmed.  It is implausible that a reasonable consumer would be confused between a law firm and a provider of directory and marketing services merely because both companies use the numbers "08" in their telephone numbers and domain names.

In light of the above, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claim for federal trademark dilution.  Because the Court finds that Plaintiff's alleged marks are not famous as a matter of law, Plaintiff's dilution claim is **HEREBY DISMISSED WITH PREJUDICE.**

    2.  <u>Intentional Interference with Economic Relations Claim</u>

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the

boundaries of fair competition." <u>Stolz</u>, 25 Cal. App. 4th 1811, 1824-25 (1994).  An intentional interference with economic relations claim can be based on two theories: (1) intentional interference with prospective economic relationship, or (2) intentional interference with a contractual relationship.  <u>Id.</u>; <u>Pac. Gas & Elec. Co. v. Bear Stearns & Co.</u>, 791 P.2d 587, 50 Cal.3d 1118, 1126 (1990).

         a.  *Contractual Relationship*

Intentional interference with contractual relationship requires a showing of "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  <u>Bear Stearns</u>, 50 Cal.3d at 1126.

Plaintiff must first allege a valid contract between Plaintiff and a third party.  Plaintiff alleges that the valid contract is a "Settlement Order" based on an alleged settlement agreement between Plaintiff and other co-defendants in this action that prohibited co-defendants Limonadi and IRTV "from directly or indirectly infringing the (1) 'Yellow Page-e-Iranian'; (2) 'The Iranian Information Center'; and (3) '08' [marks], or using any combination of the above marks and names or anything confusingly similar, including

the corresponding Farsi characters of the above marks."
SAC ¶¶ 107–08; see SAC ¶ 32.

While a settlement agreement is arguably a valid
contract, a Settlement Order is not a contract, but,
rather, a court order.  But, even if the Settlement
Order could be considered a contract for purposes of
this claim, Plaintiff fails to allege another essential
element of this claim: that Defendants induced a
"breach" of the Settlement Order.  The Settlement Order
prohibits *infringement* of Plaintiff's trademarks.  See
SAC ¶ 32.  The Court has already determined, see Dckt.
# 42, that, as a matter of law, Mesriani Defendants
have not infringed Plaintiff's trademarks and, upon
review of the SAC, it is clear that Plaintiff's
allegations do not support a finding that any other
party to this Action has infringed on Plaintiff's
trademarks.  Because Plaintiff's SAC does not allege
facts supporting a plausible allegation of breach of a
contract, Plaintiff cannot allege intentional
interference with economic relationship under the
contractual relationship theory.  See Bear Stearns, 50
Cal.3d at 1126.

b.  *Prospective Economic Relationship*

The elements of intentional interference with
prospective economic advantage are: (1) the existence
of a prospective business relationship advantageous to
the plaintiff; (2) the defendant's knowledge of the
existence of that relationship; (3) intentional acts by

the defendant designed to disrupt the relationship; (4) actual causation; and (5) resulting damages.  <u>Stolz</u>, 25 Cal. App. 4th at 1825.

First, Plaintiff does not identify a specific "prospective business relationship advantageous to the plaintiff" other than alleging that Defendants actions would "attract customers and potential customers away from Ketab and to [Defendants]."  SAC ¶ 106.  Merely referring to customers in general is not sufficient to show a specific prospective business relationship. <u>See, e.g.</u>, <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1151 (9th Cir. 2008) ("[The plaintiff] merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted,' . . . [but] . . . . does not allege, for example, that it lost a contract nor that a negotiation with a Customer failed."); <u>Oracle Am., Inc. v. CedarCrestone, Inc.</u>, No. 12-cv-04626 NC, 2013 WL 3243885, at *3-*4 (N.D. Cal. June 26, 2013) ("Without an existing relationship with an identifiable buyer, the expectation of a future sale is 'at most a hope for an economic relationship and a desire for future benefit.'"); <u>F.M. Tarbell Co. v. A&L Partners, Inc.</u>, No. CV 10-1589 PSG (Ex), 2011 WL 1153539, at *4-*5 (C.D. Cal. Mar. 23, 2011).

However, even if Plaintiff amended the pleading to identify specific existing economic relationships that had a probable expectation of future benefit,

Plaintiff's facts still do not support this claim. Plaintiff's facts must show that it is "reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." Oracle America, 2013 WL 3243885, at *3-*4.  It is not plausible under Plaintiff's facts, even if taken as true, that Mesriani Defendants' use of their "08" telephone number and domain name to advertise their law firm and legal services would harm an existing economic relationship between Plaintiff and one of Plaintiff's customer who purchases Plaintiff's directory and marketing services.[2]  See id. at *3.

Additionally, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" Della Penna v. Toyota Motor Sales, U.S.A., Inc., 902 P.2d 740, 751 (Cal. 1995).  Here, because Plaintiff's trademark dilution claim fails, and because Plaintiff

---

[2] For example, even if customers of a directory and marketing services company contacted a law firm that seemed to be the same company, the customer would *not be purchasing directory and marketing services* from the law firm, but would have to independently decide to purchase legal services after discovering that the law firm was a law firm, which cannot possibly harm the directory and marketing services company.  Furthermore, even if Defendants provided attorney referral services, as Plaintiff suddenly alleges and Defendants deny, see SAC ¶ 38, it is still not plausible that such niche referral activity would "disrupt" an economic relationship between Plaintiff and its customer because Plaintiff is not an attorney referral service, but, rather, provides directory and marketing services.

does not allege any other facts showing that Defendants' actions were independently wrongful, Plaintiff's intentional interference claim fails.

Because Plaintiff's factual allegations do not state a plausible claim for intentional interference with economic relations, the Court **GRANTS** Defendants Motion to Dismiss this claim.

The Court **DISMISSES WITH PREJUDICE** Plaintiff's claim for intentional interference with economic relations because amendment would be futile in light of Plaintiff's implausible allegations and theory of its action; because amendment would allow Plaintiff to continue to harass Defendants with meritless litigation; and because Plaintiff has already had two opportunities to amend its pleading in response to the same or similar challenges to its pleading.  See Andre-Gollihar v. Cnty. of San Joaquin, No. 2:09-cv-3313-TLN-KJN PS, 2013 WL 6512899, at *3 (E.D. Cal. Dec. 12, 2013) (listing the five factors used to assess whether leave to amend should be granted).

3.   Negligent Interference with Economic Relations Claim

"The tort of negligent interference with prospective business advantage has many of the same elements as an intentional interference with prospective business advantage claim," and "[t]o plead such a claim adequately, a plaintiff must allege that '(1) an economic relationship existed between the

plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.'" UMG Recordings, Inc. v. Global Eagle Entm't, Inc., NO. CV 14-3466 MMM (JPRx), 2015 WL 4606077, at *17 (C.D. Cal. June 22, 2015) (citing N. Am. Chemical Co. v. Sup. Crt., 59 Cal. App. 4th 764, 786, 69 Cal. Rptr. 2d 466 (Ct. App. 1997)).

For the same reasons Plaintiff's intentional interference claim fails, Plaintiff's negligent interference claim fails.[3]

Furthermore, the tort of negligent interference with economic relationship "arises only when the

---

[3] Plaintiff fails to allege an advantageous prospective business relationship or opportunity "with particularity," UMG Recordings, 2015 WL 4606077, at *18, and Plaintiff fails to allege plausible facts showing that Defendants' conduct was "independently wrongful," Singman v. NBA Props., Inc., No. CV 13-05675 ABC (Shx), 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014).

defendant owes the plaintiff a duty of care." <u>Singman v. NBA Props., Inc.</u>, No. CV 13-05675 ABC (Shx), 2014 WL 7892049, at *5 (C.D. Cal. Jan. 17, 2014).  Plaintiff alleges that Defendants owed Plaintiff a duty of care because Defendants knew of the existence of the Settlement Order and knew that using Defendants' telephone number and domain name containing the numbers "08" "would divert consumers to Defendants in direct competition with Ketab."  SAC ¶ 116.  Because the above analysis rejects Plaintiff's allegations of economic interference based on the Settlement Order and Defendants' use of its "08" telephone number and domain name, Plaintiff's allegations of duty are not plausible.[4]

---

[4] To allege "the tort of negligent interference with prospective economic advantage between parties not in privity of contract," "the plaintiff must show that a 'special relationship' existed between the parties." <u>Tyson & Assocs., Inc. v. Denko</u>, 89 F.3d 846, 1996 WL 355566 (Table), at *1 (9th Cir. June 25, 1996).  California courts use the following six "J'aire factors" to determine whether a special relationship exists for purposes of duty:
(1) the extent to which the transaction was intended to affect the plaintiff;
(2) the foreseeability of harm to the plaintiff;
(3) the degree of certainty that the plaintiff suffered injury;
(4) the closeness of the connection between the defendant's conduct and the injury suffered;
(5) the moral blame attached to defendant's conduct; and
(6) the policy of preventing future harm.
<u>Id.</u> (citing <u>J'Aire Corp. v. Gregory</u>, 598 P.2d 60, 63 (Cal. 1979)).  California courts use such flexible factors in order to allow "compensation for foreseeable injuries caused by a defendant's want of ordinary care."  <u>Id.</u>
     Here, because Plaintiff and Defendants engage in totally different types of businesses, Plaintiff's allegations that its business was harmed by Defendants' use of "08" in Defendants' telephone number and domain name are not plausible.  For the same

Plaintiff also alleges that, "given the relatively small, close knit community of Iranian community in the U.S., most of whom shared a common experience, Defendants had a duty to take reasonable steps to avoid foreseeable harm to other members of the community." SAC ¶ 116.   The Court is unaware of any law imposing a duty of economic care based on a "close knit community."

Because the Court finds that, as a matter of law, Defendants did not owe Plaintiff a duty of care with regard to this claim, the Court **GRANTS** Defendants' Motion to Dismiss this claim and **DISMISSES WITH PREJUDICE** Plaintiff's claim for negligent interference with economic relations, as amendment would be futile

---

reasons, Plaintiff's alleged facts do not support a finding that it was foreseeable that Defendants' use of their "08" telephone number and domain name would harm Plaintiff because Plaintiff and Defendant are not competitors.  Regarding the third factor, though Plaintiff alleges it has suffered injury to its business, Plaintiff's allegation is vague and does little to persuade the Court why this factor should weigh in favor of duty.  Regarding the fourth factor, Plaintiff has not alleged a plausible connection between Defendants' conduct (use of the "08" telephone number and domain name for Defendants' legal-related services) and Plaintiff's alleged harm of losing profits and customers because, again, Plaintiff and Defendants are not competitors. Regarding the fifth factor, Plaintiff's facts do not support a plausible finding that Defendants conduct was in any way morally wrong.  And finally, there is no policy of preventing future harm at issue here because it is not plausible that Defendants' use of the number combination "08" in a telephone number and domain name to advertise legal services harmed Plaintiff, a provider of marketing and information directory services.  See id. at *1-*2 (holding that the allegations did not support a finding that harm was a reasonably foreseeable result of the defendant's alleged conduct).  As such, the Court finds that there was no "special relationship" between Plaintiff and Defendants such that Defendants owed Plaintiff a duty of care.

and harassing to Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court **HEREBY GRANTS** Mesriani Defendants' Motion to Dismiss [108] in its entirety.  Plaintiff's three remaining claims against Mesriani Defendants for (1) federal trademark dilution, (2) intentional interference with economic relations, and (3) negligent interference with economic relations are **HEREBY DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: August 26, 2015          RONALD S.W. LEW
                                **HONORABLE RONALD S.W. LEW**
                                Senior U.S. District Judge