1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  KETAB CORP.,                    )    2:14-cv-07241-RSWL (MRW)
                                    )
12              Plaintiff,          )
                                    )
13      vs.                         )    **ORDER re: Plaintiff's**
                                    )    **Motion to Dismiss**
14                                  )    **Defendants' Second**
                                    )    **Amended Counterclaim**
15  MESRIANI & ASSOCIATES,          )    **Against Ketab Corp. and**
    RODNEY MESRIANI, SEYED ALI      )    **Bijan Khalili** [145]
16  LIMONADI, ALI LIMONADI,         )
    STUDIO CINEGRAPHIC LOS          )
17  ANGELES dba IRTV, MELLI         )
    YELLOW PAGES, INC., and         )
18  DOES 1 through 10,              )
    inclusive,                      )
19                                  )
                                    )
20              Defendants.         )
                                    )
21  _____)

22      Plaintiff Ketab Corporation's ("Plaintiff") action

23  alleges various claims related to trademark

24  infringement against five named defendants: Mesriani &

25  Associates, Rodney Mesriani, Seyed Ali Limonadi, Studio

26  Cinegraphic Los Angeles, and Melli Yellow Pages, Inc.[1]

27
    _____
28      [1] On August 26, 2015, the Court dismissed with prejudice all
    claims against Mesriani & Associates and Rodney Mesriani [132].

                                    1

Defendants Seyed Ali Limonadi, Studio Cinegraphic Los Angeles, and Melli Yellowpages ("Counterclaimants") allege five Counterclaims against Plaintiff: (1) violation of Section 17200 of the California Business & Professions Code ("UCL claim") ; (2) cancellation of trademark registrations [No. 3,271,704], [No. 3,246,367], [No. 3,337,567] (collectively, "Disputed Marks" or "Ketab Marks"); (3) declaration of invalidity of trademark Registration Number 3,337,567; (4) declaration of invalidity of trademark Registration Number 3,271,704; and (5) declaration of non-infringement of the Ketab Marks.  Second Am. Countercl. ("SACC") ¶¶ 45-83.

Currently before the Court is Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaim Against Ketab Corp. and Bijan Khalili [145] ("Motion" or "Motion to Dismiss"), and Plaintiff's Request for Judicial Notice in Support of Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaim Against Ketab Corp. and Bijan Khalili [146] ("Request for Judicial Notice").  For the reasons set forth below, the Court **HEREBY GRANTS** Plaintiff's Request for Judicial Notice [146] and **GRANTS** Plaintiff's Motion [145].

## I. BACKGROUND

### A.  Factual Background

Plaintiff is a California corporation based in Los Angeles that is "in the business of providing telephone

2

directory and marketing services . . . to the Iranian community in Southern California, . . . and around the world, who live outside of Iran."  Second Am. Compl. ("SAC") ¶ 12, ECF No. 106.

Counterclaimant Melli Yellowpages, Inc. is a California corporation based in Studio City, California, that provides telephone directory and marketing services to the Iranian community in the Los Angeles area.  SACC ¶¶ 1, 12.  Counterclaimant Studio Cinegraphic Los Angeles, dba IRTV ("IRTV") is an Iranian television channel that provides local news, information, and data on Iranian businesses, activities, and cultural and commercial events.  Id. ¶¶ 1, 9.  Counterclaimant Seyed Ali Limonadi ("Limonadi") is an individual residing in Los Angeles who owns Melli Yellowpages, Inc.  Id. ¶ 1.

Counterclaimants allege that Melli Yellowpages and Ketab are "the only two competitors who provide telephone directory and marketing services . . . to the Iranian community in the Los Angeles area."  Id. ¶ 12.

**B.  <u>Procedural Background</u>**

On September 16, 2014, Plaintiff filed its Complaint against Counterclaimants and other defendants [1].  On October 23, 2014, Counterclaimants filed their Answer [24], which included Counterclaims for violation of California Business & Professions Code § 17200 and cancellation of trademark registrations.  On November 14, 2014, Plaintiff filed its Answer to the

Counterclaims [32].  On March 2, 2015, Plaintiff filed its First Amended Complaint [53] ("FAC").  On March 16, 2015, Counterclaimants filed their Answer to the FAC [65], which included the same two Counterclaims.

On March 31, 2015, Plaintiff filed a Motion to Dismiss Counterclaims [79], which the Court granted with leave to amend because Counterclaimants failed to timely oppose the motion.  <u>See</u> Order re: Pl.'s Mot. Dismiss Defs.' Countercl. 4:16-18, 4:26-5:1, ECF No. 101.  On May 22, 2015, Counterclaimants filed their First Amended Counterclaim [105].  That same day, Plaintiff filed its Second Amended Complaint [106] ("SAC").  On June 5, 2015, Counterclaimants filed their Answer to Plaintiff's SAC [115], which contained the same two Counterclaims.  On June 12, 2015, Plaintiff filed a Motion to Dismiss Defendants' Amended Counterclaim [120] ("ACC"), which the Court granted with twenty days leave to amend.  <u>See</u> Order re: Pl.'s Mot. Dismiss Defs.' Am. Countercl. 14:4-13, ECF No. 133.

On September 17, 2015, Counterclaimants filed their SACC [137].  On October 8, 2015, Plaintiff filed the present Motion to Dismiss Defendants' SACC [145].  The Opposition [147]and Reply [150] were timely filed.  The hearing was originally set for November 10, 2015, and the matter was taken under submission on November 4, 2015 [153].

/ / /

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss a counterclaim brought under Rule 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint. Oracle America, Inc. v. CedarCrestone, Inc., 938 F. Supp. 2d 895, 900 (N.D. Cal. 2013). Dismissal can be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991). The question presented by a motion to dismiss is not whether the

plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual grounds to support a plausible claim to relief, thereby entitling the plaintiff to offer evidence in support of its claim. <u>Iqbal</u>, 556 U.S. at 678; <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citation omitted).

**III. DISCUSSION**

**A.   Judicial Notice**

Copies of trademark registration certificates fall within the category of documents that the court may judicially notice under Federal Rule of Evidence 201(b)(2). <u>Metro Publ'g, Ltd. v. San Jose Mercury News</u>, 987 F.2d 637, 641 n. 3 (9th Cir. 1993). Accordingly, the Court **GRANTS** Plaintiff's Request for Judicial Notice [146] of the following three trademark registration certificates:

1.   Registration No. 3,271,704;

2.   Registration No. 3,337,567; and

3.   Registration No. 3,246,367.

/ / /

1  **B.   Compliance with Local Rule 7-3**

2      Local Rule 7-3 requires that "counsel contemplating

3  the filing of any motion shall first contact opposing

4  counsel to discuss thoroughly, preferably in person,

5  the substance of the contemplated motion and any

6  potential resolution." L.R. 7-3.  The Local Rule

7  further requires that this conference shall take place

8  at least seven (7) days prior to the filing of the

9  motion.[2]  Id.  Here, Plaintiff's Motion [145] was filed

10  on October 8, 2015.  At the earliest, the Rule 7-3

11  conference took place on October 2, 2015, which is six

12  days before the Motion was filed.  Thus, Plaintiff

13  failed to comply with Local Rule 7-3.

14      If a motion is filed less than seven (7) days after

15  the Local Rule 7-3 conference, the court may, in its

16  discretion, refuse to consider the motion for that

17  reason.  See, e.g., Reed v. Sandstone Properties, L.P.,

18  No. CV 12-05021 MMM (VBKx), 2013 WL 1344912, at *6

19  (C.D. Cal. Apr. 2, 2013).  However, where the opposing

20  party suffered no real prejudice as a result of the

21  late conference, courts generally consider the motion

22  on the merits.  Id.  Here, Counterclaimants have not

23  demonstrated that Plaintiff's Motion is "unnecessary."

24  Nor do Counterclaimants provide any arguments that they

25  have suffered prejudice as a result of the late

26  _____

27      [2] Plaintiff cites an outdated version of Local Rule 7-3,
    which requires the "meet and confer" to occur at least five (5)
28  days prior to the filing of a motion to dismiss.  See Reply 1:27-
    2:4.

conference.  Thus, the Court considers the merits of Plaintiff's motion regardless of Plaintiff's failure to comply with Local Rule 7-3.  See Thomas v. U.S. Foods, Inc., No. 8:12-cv-1221-JST (JEMx), 2012 WL 5634847, at *1 n. 1 (C.D. Cal. Nov. 14, 2012) (considering the plaintiff's motion despite failure to comply with Local Rule 7-3).  Nonetheless, the Court admonishes Plaintiff of the seriousness of its failure to follow the Local Rules and cautions Plaintiff to comply with Local Rule 7-3 in the filing of any future motions.

**C.   California Business & Professions Code § 17200 (Count One)**

"California's [UCL] prohibits any 'unlawful, unfair or fraudulent business act or practice.'" Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17200).  As such, to state a cause of action under the UCL, the claimant must allege either unlawful, unfair, or fraudulent business activity.  VP Racing Fuels, Inc. v. General Petroleum Corp., 673 F. Supp. 2d 1073, 1086 (E.D. Cal. 2009).

1.   <u>Statute of Limitations</u>

The statute of limitations for an unfair competition claim is "four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208; see also Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 857 (9th Cir. 2002).  Courts have developed a handful of equitable exceptions to the

usual rules governing limitations periods, including, for example, equitable tolling, the discovery rule, fraudulent concealment, the continuing violation doctrine, and the doctrine of continuous accrual. Aryeh v. Canon Bus. Solutions, Inc., 292 P.3d 871, 875-76 (Cal. 2013).  Equitable tolling may apply in "extraordinary" cases where it would be unfair or unjust to allow the statute of limitations to bar the claims.  Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1004 (9th Cir. 2006).  "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue."  Id. at 1003-1004.  However, where the claim shows on its face that it would be barred without the application of equitable tolling, the court may require the claimant to demonstrate that his claims survive Section 17208's limitations period at the pleading stage.  Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914, 920-21 (Cal. 2005).

Here, the SACC shows on its face that several of Counterclaimants' allegations would be barred absent equitable tolling.  However, the SACC does not allege the presence of any factors which would support tolling of the limitations period, such as the discovery rule, continuing violation doctrine, or continuous accrual doctrine.  See Aryeh, 292 P.3d at 879.  Thus, this

Court rejects the application of equitable tolling of the statute of limitations.

Accordingly, the following allegations are barred by the statute of limitations:

(1) Counterclaimants' allegation that Plaintiff "deceived Defendants and Counterclaimants, as well as the public" when Plaintiff placed an ® symbol next to its "08" design mark (Registration Number 3,271,704) prior to its registration date of October 16, 2006.  SACC ¶ 48.  Absent an exception, the limitations period on this claim ran no later than 2010, barring Counterclaimants' 2014 suit.

(2) Counterclaimants' allegation that "Ketab was the driving force behind a class action filed . . . in 1998," which was "baseless," "abusive," and "void against public policy."  SACC ¶¶ 50-51.  Absent an exception, the limitations period on this claim ran no later than 2002, barring Counterclaimants' 2014 suit.

Counterclaimants' remaining allegation[3] in support of its UCL claim concerns the cybersquatting matter initiated by Counterclaimants on September 30, 2011, after Plaintiff allegedly "reserved through eNom, Inc., a domain name identical to Defendant and Counterclaimant's trademark 5050100 through a false registrant name," and subsequently "attempt[ed] to avoid service of the complaint." SACC ¶ 49; SACC, Ex. 8. Accepting the truth of Counterclaimants' allegations solely for purposes of Plaintiff's limitations defense, this allegation is not barred by the four-year statute of limitations under California Business & Professions Code § 17208.

2. <u>Unlawful Act</u>

To state a cause of action based on an "unlawful" business act or practice under the UCL, the claimant must allege facts sufficient to show a violation of

---

[3] Counterclaimants' allegations that (1) Plaintiff's "abusive litigation tactics are an attempt to enforce alleged trademark rights in descriptive and/or generic terms . . . such that [Counterclaimants] and the public are unable to use descriptive terms in the market for describing the advertising of its goods and services," SACC ¶ 46, and (2) Plaintiff "provides an untenable interpretation of the Settlement Agreement in an effort to . . . force [Counterclaimants] to expend financial resources in defending what Ketab knows are unprotectable and unregistrable trademarks," SACC ¶ 47, are dependent on Plaintiff's bringing their infringement action, which conduct is protected by the litigation privilege. <u>Kane v. DeLong</u>, No. C-12-5437, 2013 WL 1149801, at *11-12 (N.D. Cal. Mar. 19, 2013) ("[T]he litigation privilege serves to prohibit UCL action to the extent it is based on Plaintiff's filing their infringement action, even if such an action is unethical or even illegal."). Thus, Counterclaimants' UCL claim cannot be based on such allegations.

1  some underlying law.  <u>VP Racing Fuels</u>, 673 F. Supp. 2d

2  at 1086.

3       As to the alleged cybersquatting matter,

4  Counterclaimants fail to allege a violation of any

5  specific law in the SACC.  In their Opposition,

6  Counterclaimants allege violation of two specific

7  statutes, the Uniform Domain Name Resolution Policy

8  ("UDRP") and the Anti-cybersquatting Consumer

9  Protection Act ("ACPA").  Opp'n 8:3-12.  However, such

10  allegations are not in the SACC, and thus are not

11  considered by the Court at the motion to dismiss stage.

12  In fact, this Court made the exact same finding in

13  ruling on Plaintiff's Motion to Dismiss the ACC, and

14  Counterclaimants have not amended the SACC to cure the

15  deficiencies in the ACC.  <u>See</u> Order re: Pl.'s Mot.

16  Dismiss ACC 9:17-21, ECF No. 133.  Because

17  Counterclaimants once again fail to identify in the

18  SACC any specific law violated by Plaintiff's alleged

19  activity, Counterclaimants' UCL claim cannot be based

20  on an unlawful act.[4]

21  / / /

22  / / /

23  _____

24       [4] Counterclaimants did amend the SACC in paragraph 48 to
   specifically cite various trademark statutes which Plaintiff
25  violated when Plaintiff allegedly included an ® next to its "08"
   mark (No. 3,271,704) prior to the registration date.  <u>Compare</u>
26  SACC ¶ 48, <u>with</u> ACC ¶ 30.  However, the allegations in paragraph
   48 are barred by the applicable statute of limitations, and
27  Counterclaimants have not amended their SACC to identify any
   specific law violated by Plaintiff's actions in the
28  cybersquatting matter.

1        3.    <u>Unfair Act</u>

2        To sufficiently plead a UCL action based on an

3   "unfair" business act or practice, the claimant must

4   "allege facts showing the 'unfair' nature of the

5   conduct and that the harm caused by the conduct

6   outweighs any benefits that the conduct may have."  VP

7   Racing, 673 F. Supp. 2d at 1087.  A business act or

8   practice is "unfair" when the conduct "threatens an

9   incipient violation of an antitrust law, or violates

10  the policy or spirit of one of those laws because its

11  effects are comparable to a violation of the law, or

12  that otherwise significantly threatens or harms

13  competition."  Id. at 1087-88 (quoting Cel-Tech

14  Comm'ns, Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527,

15  565 (Cal. 1999)).

16      Here, Counterclaimants argue that, "[Plaintiff] is

17  asserting rights to the descriptive terms necessary to

18  sell yellow page services and information," which "is

19  in effect, creating a barrier to entry to competitors

20  in this market or otherwise restraining trade," and

21  that Plaintiff's "creation of barriers to entry in the

22  relevant market are 'unfair' and serve as grounds for

23  an unfair competition claim."  Opp'n 8:27-9:3.

24  However, Counterclaimants have failed to amend their

25  SACC in accordance with the Court's August 28, 2015

26  Order, which held that "Counterclaimants' ACC does not

27  mention any law, much less antitrust law.  As such,

28  Counterclaimants' UCL claim cannot be based upon the

unfair prong."  Order re: Pl.'s Mot. Dismiss ACC 11:1-
4.  Counterclaimants' SACC, as with their ACC, does not
mention any law or antitrust law, the violation of
which significantly threatens or harms competition.
Accordingly, Counterclaimants do not sufficiently
allege a UCL claim based on the unfair prong.

    4.  <u>Fraudulent Act</u>

    A claim for fraud requires proof of five elements:
(1) misrepresentation (false representation,
concealment, or nondisclosure); (2) knowledge of
falsity (or "scienter"); (3) intent to defraud (i.e.,
intent to induce reliance); (4) justifiable reliance;
and (5) damages.  <u>Bank of the West v. Valley Nat. Bank
of Ariz.</u>, 41 F.3d 471, 477 (9th Cir. 1994).

    Federal Rule of Civil Procedure 9(b) requires a
party alleging fraud to "state with particularity the
circumstances constituting fraud" even though
"[m]alice, intent, knowledge, and other conditions of a
person's mind may be alleged generally."  Fed. R. Civ.
P. 9(b).  "Rule 9(b)'s particularity requirement
applies to state-law causes of action," such as a UCL
claim.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097,
317 F.3d 1097, 1103 (9th Cir. 2003) (holding that
allegations of fraud supporting a claim under
California Business & Professions Code § 17200 must
satisfy Rule 9(b)).  The circumstances surrounding the
alleged fraud must "be specific enough to give
[Plaintiff] notice of the particular misconduct . . .

so that [Plaintiff] can defend against the charge and not just deny that [it has] done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (citation omitted).

Here, Counterclaimants argue that "on September 30, 2011, [Counterclaimants] discovered that Ketab falsely represented that [it] was different parties in order to evade service in a domain name cybersquatting action under the [UDRP]."  Opp'n 7:1-4.  Counterclaimants argue that "Ketab falsely claimed to be a company called PMB 368," and after service was attempted, "changed its name to a company called Import & Export, and then later to [an] individual Ahmad Shah" to avoid service.  Id. at 7:6-11.  Counterclaimants argue that "[t]he cost of the UDRP proceeding coupled with the costs associated with multiple service attempts damaged [Counterclaimants]" and constitutes fraud under the UCL.  Id. at 7:22-23.

However, the face of the SACC only alleges that "Ketab brought two frivolous matters in an attempt to increase costs and harm its competitor . . . Counterclaimant.  The most recent matter involved cybersquatting.  Ketab reserved through eNom, Inc., a domain name identical to [Counterclaimants'] trademark

5050100 through a false registrant name. [Counterclaimants] initiated suit through the National Arbitration Forum ('NAF'). . . . after several tactics used by Ketab in an attempt to avoid service of the complaint." SACC ¶ 49. After "Ketab failed to answer to complaint," "[t]he panel of the NAF found that the registration of the domain was identical, that the registrant had no legitimate interests and that the registration was done in bad faith." Id. Accordingly, "the NAF ordered the transfer of the domain name 5050100.com from Ketab to [Counterclaimants]." Id.

Counterclaimants' allegations fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) because they do not "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Counterclaimants' averments of fraud are not "specific enough to give [Plaintiff] notice of the particular misconduct . . . so [Plaintiff] can defend against the charge." Vess, 317 F.3d at 1106. Moreover, Counterclaimants averments of fraud do not contain "the who, what, when, where, and how" of the misconduct charged. Id.

As to the first element of a fraud claim, Counterclaimants argue that Plaintiff falsely represented that it was a different entity in order to avoid service in the cybersquatting matter. See SACC ¶ 49. First, this identification of Ketab as the source of the misrepresentations is insufficiently specific to

comply with the "who" requirement of Rule 9(b).  <u>See</u> <u>Segal Co. v. Amazon.com</u>, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) (granting motion to dismiss in part because reference to defendant's "representatives" fails to sufficiently identify alleged wrongdoers); <u>Silicon Knights, Inc. v. Crystal Dynamics, Inc.</u>, 983 F. Supp. 1303, 1315 (N.D. Cal. 1997) (granting motion to dismiss in part because general allegation listing all defendants is insufficient).  Second, Counterclaimants' allegations do not contain the "where" or, most importantly, the "how" of the misconduct charged. <u>Vess</u>, 317 F.3d at 1106.  The SACC fails to sufficiently state "how" Plaintiff is connected to the cybersquatting matter, as the Respondent in that matter was "Import & Export/Ahmad Shah," and the SACC does not anywhere provide factual support for Plaintiff's connection to those entities.  <u>See</u> SACC, Ex. 8, at 139. Third, the SACC does not specifically state the "when" of Plaintiff's alleged entity changes.  Exhibit 8 to the SACC only notes that, on September 30, 2011, the NAF served the complaint in the cybersquatting matter on "Import & Export/Ahmad Shah."  SACC, Ex. 8, at 139. The SACC does not anywhere allege "when" Plaintiff made its alleged entity changes to avoid service of that complaint.

As to the second element of a fraud claim, even though Rule 9(b) only requires knowledge to be alleged generally, the SACC does not mention anywhere that

Plaintiff had knowledge of its alleged false representation.  Moreover, as to the third and fourth elements of a fraud claim, the SACC does not allege that Plaintiff intended to induce Counterclaimants' reliance on its false representations, or that Counterclaimants justifiably relied on Plaintiff's representations.

Finally, Counterclaimants do not sufficiently plead the fifth element of damages as a result of Plaintiff's actions.  Counterclaimants allege that "Ketab brought two frivolous matters in an attempt to increase costs and harm its competitor [Counterclaimant]."  SACC ¶ 49. However, the alleged cybersquatting matter was not brought by Plaintiff.  Rather, Counterclaimants initiated the suit, and in fact, prevailed in that matter when the NAF transferred the disputed domain name to Counterclaimants.  See id.  Accordingly, Counterclaimants fail to allege sufficient facts to support its UCL claim under the fraud prong.

Because Counterclaimants do not allege sufficient facts under any of the three prongs of an unfair competition claim, the Court **GRANTS** Plaintiff's Motion to Dismiss [145] the UCL claim.  This Court warned Counterclaimants that this was their final opportunity to amend the Counterclaim because Counterclaimants have had multiple opportunities to do so.  See Order re: Pl.'s Mot. Dismiss ACC 11:17-20.  Where a party has previously filed an amended pleading, as

Counterclaimants have done here, "the district court's discretion to deny leave to amend is 'particularly broad.'"  Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004) (citing Chodos v. W. Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002)).  Counterclaimants' SACC contains the exact same deficiencies as their ACC.  Accordingly, because Counterclaimants have been given multiple opportunities to allege additional facts to support an unfair competition claim, the Court **DISMISSES** the claim **WITHOUT LEAVE TO AMEND**.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (noting "repeated failure to cure deficiencies by amendments previously allowed" as a factor supporting denial of leave to amend).

**D.    Cancellation of Registrations for Fraud (Count Two)**

   1.    Standing

   Section 1064 of the Lanham Act provides the standard for cancellation of registration of a trademark.  15 U.S.C. § 1064.  In order to have standing under Section 1064, the cancellation petitioner must "plead and prove facts showing a 'real interest' in the proceeding."  Halicki Films, LLC v. Sanderson Sales and Marketing, 547 F.3d 1213, 1228 (9th Cir. 2008) (quoting Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 349 (9th Cir. 1984)).  The cancellation petitioner "must show that he is more than an intermeddler but rather has a personal interest, and that there is a real controversy between the parties."

_Id._ He "must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark." _Id._ at 1228-29. Courts have found standing to exist where the cancellation petitioner asserts a likelihood of confusion between the petitioner's mark and the registered mark at issue, or where the petitioner's application is rejected during prosecution. _Id._ at 1229.

Counterclaimants' allegations in the SACC regarding standing are identical to the allegations in the ACC. _Compare_ SACC ¶¶ 12, 26, 51, _with_ ACC ¶ 11, 26, 31. This Court already determined that those allegations were insufficient to show that Counterclaimants have standing to bring their cancellation claims. _See_ Order re: Pl.'s Mot. Dismiss ACC 12:5-13:20. Counterclaimants' standing to bring their cancellation claim depends entirely on Counterclaimants' allegations that certain marks are "generic and/or descriptive." Counterclaimants do not allege facts showing an independent injury or personal interest in the cancellation of the trademarks separate from the allegations of injury relating to the generic or descriptive nature of the marks.

Because Counterclaimants do not "show a real and rational basis for [their] belief that [they] would be damaged by the registration sought to be cancelled,

stemming from an actual commercial or pecuniary interest in [their] own mark," Counterclaimants do not allege sufficient facts to show that they have standing to bring their cancellation claim.  See Halicki Films, 547 F.3d at 1228-29.  Counterclaimants have not asserted a likelihood of confusion between Counterclaimants' mark and the registered mark at issue, or that an application of Counterclaimants was rejected during prosecution.  Id. at 1229. Accordingly, the Court **GRANTS** Plaintiff's Motion to Dismiss [145] the cancellation claim.  As noted above, because Counterclaimants have been given multiple opportunities to amend their Counterclaim, the Court **DISMISSES** the cancellation claim **WITHOUT LEAVE TO AMEND**.

**E.**   **Counterclaims Three, Four, and Five**

    1.   Amendment of the SACC Without Seeking Leave to Amend

In their third through fifth causes of action, Counterclaimants seek to assert Counterclaims brought before the Court for the first time in the SACC. Plaintiff argues that these claims should be dismissed because Counterclaimants did not seek leave to amend to add these new claims.  Mot. 18:16-27.

"California district courts have occasionally considered new claims submitted in an amended [pleading] where the prior order of dismissal granted leave to amend without limitation."  DeLeon v. Wells

<u>Fargo Bank, N.A.</u>, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010).  However, in cases like this one, where leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken.  <u>Id.</u>; <u>see, e.g.</u>, <u>Kennedy v. Full Tilt Poker</u>, No. CV-09-07964-MMM-AGRx, 2010 WL 3984749, at *1 (C.D. Cal. Oct. 12, 2010) (striking the third amended complaint because plaintiff did not seek leave to add new claims as required by Rule 15).

The prior Order of this Court only granted leave to amend as to Counterclaimants' claims for (1) violation of California Business and Professions Code § 17200 and (2) cancellation of registrations.  Order re: Pl.'s Mot. Dismiss ACC 14:8-13.  Therefore, Counterclaimants were required to seek leave of the Court before adding new claims.  Counterclaimants did not seek leave to amend, nor do they argue in their Opposition that the addition of Counterclaims three through five is proper. In fact, Counterclaimants' Opposition only addresses Counterclaims one and two, and does not put forward any substantive arguments that Counterclaims three through five should survive Plaintiff's Motion to Dismiss.  As discussed below, each of Counterclaimants' new claims is subject to dismissal, and, accordingly, leave to amend to add the new claims will not be granted.

Accordingly, this Court **GRANTS** Plaintiff's Motion to Dismiss Counterclaims three, four, and five.

Generally, under Rule 15, the policy that "leave shall be freely given when justice so requires" is "to be applied with extreme liberality." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. — the leave sought should, as the rules require, be 'freely given.'" <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Here, Counterclaimants unduly delayed in adding claims three and four to their SACC. This Court finds no reason why Counterclaims three and four could not have been asserted long before now, especially when Counterclaimants alleged in their first responsive pleading that "the purported Ketab Marks are the hallmark of descriptiveness and/or genericness and are not enforceable." Countercl. ¶ 16, ECF No. 24.

However, undue delay without a "contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment" is insufficient to deny a motion to amend. <u>Bowles v. Reade</u>, 198 F.3d 752, 758 (9th Cir. 1999). As discussed in further detail below, the proposed

amendments would be futile because the issues will be addressed in Plaintiff's case-in-chief.  In order for Plaintiff to meet its burden, Plaintiff will need to prove (1) that its trademarks are valid, and (2) that Counterclaimants infringed those trademarks. Accordingly, the Court does not grant leave to amend the SACC to add claims for declaration of invalidity and declaration of non-infringement.

> 2.    Declaration of Invalidity and Declaration of Non-infringement

The Declaratory Judgment Act provides courts with discretion to grant or dismiss a counterclaim for declaratory judgment.  See Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995); Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998).  On a motion to dismiss, several district courts within the Ninth Circuit have found that counterclaims for declaratory relief are improper if "repetitious of issues already before the court via the complaint o[r] affirmative defenses."  Sw. Windpower, Inc. v. Imperial Electric, Inc., No. CV-10-8200-SMM, 2011 WL 486089, at *3 (D. Ariz. Feb. 4, 2011); Infa-Lab, Inc. v. KDS Nail Int'l, No. CIV 2:07-01270 WBS EFB, 2008 WL 4793305, at *3 (E.D. Cal. Oct. 27, 2008) (citing Berger v. Seyfarth Shaw, LLP, No. 07-05279, 2008 WL 2468478, at *2 (N.D. Cal. June 17, 2008)).  Courts in other jurisdictions have also concluded that if the factual and legal issues in the claim and counterclaim are identical, it

24

is appropriate to dismiss the counterclaim.  <u>See</u> <u>Knights Armament Co. v. Optical Sys. Tech., Inc.</u>, 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008) ("Because the parties' rights with respect to trademarks will be decided by the infringement claims at hand, there is no need for declaratory judgment."); <u>Pettrey v. Enterprise Title Agency, Inc.</u>, No. 05-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006) ("A number of courts agree that mirror-image counterclaims are improper.").

    Plaintiff's Complaint alleges direct, contributory, and vicarious trademark infringement against Counterclaimants.  <u>See</u> SAC ¶¶ 46-119.  In Counterclaims three and four, Counterclaimants seek a declaration that two of Plaintiff's trademarks are invalid as being merely descriptive.  SACC ¶¶ 66-77.  In Counterclaim five, Counterclaimants seek a declaration that "Counterclaimants have not infringed, directly, contributorily or vicariously the KETAB MARKS and [Plaintiff has] failed to plead facts that make out a prima facie claim for trademark infringement against Counterclaimants under federal or state law."  SACC ¶ 82.  Counterclaimants argue that "[s]ince [Plaintiff's] allegations against the MESRIANI DEFENDANTS make up the factual basis for its claims against [Counterclaimants] and [Plaintiff has] failed to plead any independent basis for infringement of the KETAB MARKS by Counterclaimants, such claims fail as a matter of law."  <u>Id.</u> ¶ 81.

The Court **DISMISSES** Counterclaimants' declaratory judgment claims because they are "repetitious of issues already before the court via the complaint." <u>Sw. Windpower</u>, 2011 WL 486089, at *3.  In adjudicating the main action, this Court will determine (1) whether Plaintiff's trademarks are valid, and (2) whether Counterclaimants directly, contributorily, or vicariously infringed Plaintiff's trademarks. Accordingly, the issues asserted in the Counterclaim will necessarily be disposed of by Plaintiff's claims, and the Counterclaims for declaration of invalidity and declaration of non-infringement will be rendered moot. <u>See</u> <u>id.</u>  Because the third, fourth, and fifth Counterclaims cannot be saved by amendment, the Court **GRANTS** Plaintiff's Motion [145] as to these claims **WITHOUT LEAVE TO AMEND.**  <u>Eminence Capital</u>, 316 F.3d at 1052.

### IV. CONCLUSION

For the foregoing reasons, the Court **HEREBY GRANTS** Plaintiff's Motion to Dismiss the SACC [145] in its entirety.  All five Counterclaims are **DISMISSED WITHOUT LEAVE TO AMEND.**

**IT IS SO ORDERED.**


DATED: December 4, 2015          s/ RONALD S.W. LEW

                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge