1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  KETAB CORP.,                    )    CV 14-07241-RSWL-MRWx
                                    )
13              Plaintiff,          )
                                    )    **ORDER** Granting Melli
14        v.                        )    Defendants' Motion for
                                    )    Judgment as a Matter of
15                                  )    Law
                                    )
16  MESRIANI LAW GROUP; RODNEY      )
    MESRIANI; SEYED ALI             )
17  LIMONADI; STUDIO                )
    CINEGRAPHIC LOS ANGELES dba     )
18  IRTV; and MELLI YELLOW          )
    PAGES, INC.,                    )
19                                  )
                                    )
20              Defendants.         )
                                    )
21  _____ )

22       This matter came before the Court on Melli

23  Defendants' Motion for Judgment as a Matter of Law.

24  See Minutes of Court Trial (2nd Day), ECF No. 283.

25  This order is intended to memorialize the Court's oral

26  ruling **GRANTING** Melli Defendants' Motion for Judgment

27  as a Matter of Law.

28       At the close of Plaintiff Ketab Corporation's

("Plaintiff") case, Defendants Seyed Ali Limonadi, Studio Cinegraphic Los Angeles dba IRTV, and Melli Yellow Pages, Inc. ("Melli Defendants" or "Defendants") moved for judgment as a matter of law on Plaintiff's claims for federal and state trademark infringement and unfair competition, which the Court construes as a motion under Federal Rule of Civil Procedure 52(c) for judgment based on partial findings in a bench trial.

Federal Rule of Civil Procedure 52(c) provides: "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue. [. . .] A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."

When deciding a motion under Rule 52(c), the Court is "not required to draw any inferences in favor of the non-moving party," as it would be required to do when deciding a motion for judgment as a matter of law under Rule 50(a). Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006). Rather, the Court "may make findings in accordance with its own view of the evidence." Id.

/ / /

/ / /

/ / /

**I.    FINDINGS OF FACT[1]**

The Court makes the following findings of fact:

1.    Plaintiff Ketab is a corporation organized and existing under the laws of the State of California, with its principal place of business at 1419 Westwood Blvd., Los Angeles, CA 90024.

2.    Defendant IRTV is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 12238 Moorpark Street, Studio City, CA 91604.

3.    Defendant Melli is a corporation organized and existing under the laws of the State of California, with its principal place of business at 12238 Moorpark Street, Studio City, CA 91604.  Melli was incorporated in 2006.

4.    Defendant Limonadi is an individual residing in Los Angeles, California.  Limonadi is the sole shareholder of Melli.

5.    Plaintiff and Melli both provide information directory services in print, by telephone, and online.

6.    Plaintiff and Melli both provide information directory services to the Iranian community in

---

[1] Findings of Fact Nos. 1-5 and 7-8 are set out as agreed, stipulated facts in the April 26, 2016, Second Amended Final Pretrial Conference Order [264].

Southern California.

7. Plaintiff and Melli are competitors of each other.

8. Plaintiff is the owner of a Federal Trademark registered under Registration No. 3,271,704, described as the "08" Mark, registered on July 7, 2007, which is now incontestable.

9. The "08" Mark consists of the numbers "08" placed in a dark rectangular box overlaid with horizontal lines that resemble closed shutters. Second Am. Compl., Ex. 1.

10. Melli Defendants have not used the "08" Mark that is the subject of Plaintiff's Registration No. 3,271,704, nor made an imitation of that design mark.

11. Plaintiff publishes a yellow pages directory. "Yellow pages" are a type of telephone directory that lists businesses and professional firms alphabetically by product or service.

12. The name of Plaintiff's yellow pages directory is "Yellow Page-e Iranian," which means "Iranian Yellow Pages."  In this action, Plaintiff claims trademark rights in the term "Yellow Page-e Iranian."

13. Plaintiff began using the alleged mark "Yellow Page-e Iranian" in 1982, and on its yellow pages book starting in 1984.  In 1992,

Plaintiff filed the fictitious business name for "Yellow Page E Iranian."

14. Plaintiff does not own a United States trademark registration for "Yellow Page-e Iranian."

15. Melli Defendants also publish a yellow pages directory.  The name of Defendants' yellow pages directory is "Yellow Page-e Melli," which means "Melli Yellow Pages."

16. Both Plaintiff and Defendant Melli use the phrase "Yellow Page-e" in their yellow page directories.

17. In Farsi, the word "yellow page" followed by the sound "-e" makes the word possessive.  For example, "yellow page-e Iranian" means "yellow pages of Iranians," or "Iranian yellow pages."

18. Plaintiff describes his own directory as an Iranian yellow pages.

19. Other companies publish Iranian yellow pages, including a "Yellow Page-e Iranian" of Canada, which advertises its services to consumers in Los Angeles through Plaintiff's yellow pages directory.

20. A company in New York operates a "Yellow Page-e Iranian" to serve the Iranian community in New York.

21. A company in Texas also operates a "Yellow Page-e Iranian" to serve the Iranian community

1    in Texas.

2    22. Melli does not use "Yellow Page-e Iranian" as
3        part of its name, but as part of a phrase,
4        which roughly translates to: "the most complete
5        Iranian Yellow Pages abroad."  Melli also used
6        the term "Yellow Page-e Iranian" in a 2014
7        television commercial, as part of a phrase
8        which translates to either "the yellow pages of
9        successful Iranians abroad," or "the successful
10       Iranian Yellow Pages abroad."

11   23. In 1982, Plaintiff began using "Markaz-e
12       Etelaate Iranian" to identify its telephone
13       hotline service, whereby the public could call
14       and ask for up-to-date telephone numbers for
15       any business.  The term "markaz-e etelaate
16       Iranian" translates to "Iranian information
17       center."

18   24. In this action, Plaintiff claims trademark
19       rights in the term "Iranian Information
20       Center," and its Farsi translation "Markaz-e
21       Etelaate Iranian."

22   25. Plaintiff does not own a United States
23       trademark registration for "Iranian Information
24       Center" or its Farsi translation, "Markaz-e
25       Etelaate Iranian."

26   26. Since 2001, Melli has also offered an
27       information center, which it refers to as a
28       "markaz-e etelaate Iranian," or an "Iranian

information center."

## II. CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1.  This Court has original subject matter jurisdiction over the claims of the Second Amended Complaint.  28 U.S.C. §§ 1331, 1338, 1367.

2.  This Court has personal jurisdiction over Plaintiff Ketab Corp.

3.  This Court has personal jurisdiction over Melli Defendants.

4.  Venue is proper in this judicial district.  28 U.S.C. § 1391(b)-(c).

5.  To establish a trademark infringement claim under section 32 of the Lanham Act (15 U.S.C. § 1114) or an unfair competition claim under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Plaintiff must establish that Melli Defendants are using a mark confusingly similar to a valid, protectable trademark of Plaintiff's.  <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999).  Plaintiff must show the following elements by a preponderance of the evidence: (1) a reproduction, counterfeit, copy or colorable imitation of the mark; (2) without Plaintiff's consent; (3) in commerce; (4) in connection with the sale, offering for sale,

distribution, or advertising of any goods or services; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. _Wecosign, Inc. v. IFG Holdings, Inc._, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) (citing 15 U.S.C. § 1114(1)); _Century 21 Real Estate Corp. v. Sandlin_, 846 F.2d 1175, 1178 (9th Cir. 1988).

6.  Whereas section 32 of the Lanham Act(trademark infringement) provides protection only to registered marks, section 43(a) of the Lanham Act (unfair competition) protects against infringement of unregistered marks as well as registered marks, and protects against a wider range of practices such as false advertising and product disparagement. _Brookfield_, 174 F.3d at 1046 n. 8. Although there are some differences between a claim for federal trademark infringement and a claim for federal unfair competition, "the analysis under the two provisions is oftentimes identical." _Wecosign_, 845 F. Supp. 2d at 1079 (citing _Brookfield_, 174 F.3d at 1046 n. 8).

7.  The Ninth Circuit has consistently held that state common law claims for unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially congruent" to claims under the Lanham Act. _Id._

8

1     (citing <u>Cleary v. News Corp.</u>, 30 F.3d 1255,

2     1262-63 (9th Cir. 1994)).

3 8.   In cases involving properly registered marks, a

4     presumption of validity places the burden of

5     proving genericness upon the defendant.

6     <u>Filipino Yellow Pages, Inc. v. Asian Journal</u>

7     <u>Publ'ns, Inc.</u>, 198 F.3d 1143, 1146 (9th Cir.

8     1999).  If a supposedly valid mark is not

9     federally registered, however, the plaintiff

10     has the burden of proving nongenericness once

11     the defendant asserts genericness as a defense.

12     <u>Id.</u> (citations omitted).

13 9.   The Ninth Circuit recognizes four categories of

14     terms with respect to trademark protection: (1)

15     generic, (2) descriptive, (3) suggestive, and

16     (4) arbitrary or fanciful.  <u>Id.</u>

17 10. A "generic" term is one that refers, or has

18     come to be understood as referring, to the

19     genus of which the particular product or

20     services is a species.  <u>Surgicenters of</u>

21     <u>America, Inc. v. Medical Dental Surgeries, Co.</u>,

22     601 F.2d 1011, 1014 (9th Cir. 1979).  As one

23     commentator explained, a generic term is "the

24     name of the product or service itself - what

25     [the product] is, and as such . . . the very

26     antithesis of a mark."  <u>Filipino Yellow Pages</u>,

27     198 F.3d at 1147 (quoting 2 J. Thomas McCarthy,

28     *Trademarks and Unfair Competition* § 12:1[1]

(4th ed. 1997)).  Generic terms cannot become a trademark under any circumstances. Surgicenters, 601 F.2d at 1014.

11. In determining whether a term is generic, the Ninth Circuit has often relied on the "who-are-you/what-are-you" test: "A mark answers the buyer's question 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you?'" Filipino Yellow Pages, 198 F.3d at 1147 (quoting Official Airline Guides, Inc. v. Goss, 6 F.3d 1285, 1391 (9th Cir. 1993).  Under this test, "[i]f the primary significance of the trademark is to describe the *type of product* rather than the *producer*, the trademark [is] a generic term and [cannot be] a valid trademark."  Id. (quoting Anti-Monopoly, Inc. v. Gen. Mills Fun Grp., 611 F.2d 296, 304 (9th Cir. 1979)).

12. The term "yellow pages" has been found to be a generic term for "a local business telephone directory alphabetized by product or service." Id. (quoting AmCan Enters., Inc. v. Renzi, 32 F.3d 233, 234 (7th Cir. 1994)).

13. A merely "descriptive" term specifically describes a characteristic or ingredient of an article or service.  Surgicenters, 601 F.2d at 1014.  A descriptive term can become a valid

trademark by acquiring "secondary meaning" in the minds of consumers, i.e., it has "become distinctive of the [trademark] applicant's goods in commerce." <u>Filipino Yellow Pages</u>, 198 F.3d at 1147.

14. Plaintiff bears the burden of showing secondary meaning, which may be established through, among other things: direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. <u>Id.</u> at 1151.

15. Evidence of secondary meaning from a partial source possesses very limited probative value. <u>Id.</u> at 1152.  For example, declarations from a trademark plaintiff's employees and wholesalers have "little probative value regarding the assessment of consumer perception," because "[t]rademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark." <u>Self-Realization Fellowship Church v. Ananda Church of Self-Realization</u>, 59 F.3d 902, 910 (9th Cir. 1995).  Likewise, the views of the trademark holder himself do not reliably describe the

perceptions of consumers in general.  See
_Filipino Yellow Pages_, 198 F.3d at 1152.

16. A "suggestive" term suggests rather than
describes an ingredient, quality, or
characteristic of the goods and requires
imagination, thought, and perception to
determine the nature of the goods.
_Surgicenters_, 601 F.2d at 1014-15.  A
suggestive term is entitled to registration
without proof of secondary meaning.  _Id._

17. An "arbitrary or fanciful" term is usually
applied to words invented solely for their use
as trademarks and enjoys all the rights
accorded to suggestive terms without debating
whether the terms is "merely descriptive" and
with ease of establishing infringement.  _Id._ at
1015.

18. "It is a well established principle of
trademark law . . . that the foreign equivalent
of a merely descriptive English word is no more
registrable than the English word itself
despite the fact that the foreign term may not
be commonly known to the general public."  _In
re Optica Int'l_, 196 U.S.P.Q. 775, at *1 (TTAB
1977).  Normally no distinction can be made
between English terms and their foreign
equivalents with respect to registrability.
_Id._  Variations or phonetic equivalents are

1    equally unregistrable if they are likely to be

2    recognized as such.  Id.

3    19.  The test of trademark infringement under state,

4    federal, and common law is whether there will

5    be a likelihood of confusion.  M2 Software,

6    Inc. v. Madacy Entm't, 421 F.3d 1073, 1080 (9th

7    Cir. 2005); Brookfield, 174 F.3d at 1053; see

8    also Two Pesos, Inc. v. Taco Cabana, Inc., 505

9    U.S. 763, 780 (1992).

10   20.  In determining the likelihood of confusion,

11   courts in the Ninth Circuit consider the

12   following eight factors, often referred to as

13   the Sleekcraft[2] factors: (1) strength of the

14   mark; (2) proximity of the goods; (3)

15   similarity of the marks; (4) evidence of actual

16   confusion; (5) marketing channels used; (6)

17   type of goods and degree of care likely to be

18   exercised by purchasers in selecting goods; (7)

19   defendant's intent in selecting the mark; and

20   (8) likelihood of expansion in product lines.

21   M2 Software, 421 F.3d at 1080 (citations

22   omitted).

23   **A.   The "08" Mark**

24   21.  Plaintiff failed to present any evidence

25   showing that Melli Defendants used the "08"

26   Mark, or a confusingly similar logo or other

27

28   [2] AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir.
1979).

similar mark, to promote Melli Defendants'
services.  Plaintiff has therefore failed to
establish a claim for trademark infringement or
unfair competition for the "08" Mark.  15
U.S.C. § 1114(1); 15 U.S.C. § 1125(a); Cal.
Bus. & Prof. Code § 17200.

**B.**   **"Yellow Page-e Iranian" and "Iranian Yellow Pages"**

22.   Plaintiff's testimony and the evidence
presented demonstrates that Plaintiff's claimed
"Yellow Page-e Iranian" mark translates to
"Iranian Yellow Pages."  Just as the phrase
"Filipino Yellow Pages" was held to be generic
in Filipino Yellow Pages, the phrase "Iranian
Yellow Pages" is generic with respect to
telephone directories, and is incapable of
trademark protection.  See Filipino Yellow
Pages, 198 F.3d at 1151.  Under the "who-are-
you/what-are-you" test, the term "Iranian
Yellow Pages" is generic.  If faced with the
question, "What are you?," Plaintiff's
directory, Defendant's directory, and the
directories in Texas, New York, and Canada,
could all respond in the same way: "an Iranian
yellow pages."  At trial, Plaintiff described
his own publication as an Iranian yellow pages.
Plaintiff's testimony also established that it
did not bring suit to challenge the use of

14

"Yellow Page-e Iranian" by the yellow pages companies in Texas, New York, and Canada. Lastly, Defendant testified that it uses the phrase "yellow page-e Iranian" to explain its product as "the most complete yellow pages for Iranians abroad." If this Court were to grant Plaintiff exclusive rights to the term "Iranian Yellow Pages," it would effectively grant Plaintiff as owner of the mark "a monopoly, since a competitor could not describe his goods as what they are." <u>Surgicenters</u>, 601 F.2d at 1017. For these reasons, Plaintiff has not met its burden to prove that the unregistered term "Iranian Yellow Pages" is *not* generic.

23. Plaintiff suggests that its term "Yellow Page-e Iranian" is arbitrary and fanciful because the word "Yellow Page" does not exist in the Farsi language. However, Plaintiff did not present any evidence of consumer perceptions indicating that the primary significance of the exact term "Yellow Page-e Iranian" is not the service, but the server. <u>See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.</u>, 718 F.2d 327, 330 (9th Cir. 1983), <u>rev'd on other grounds</u> 469 U.S. 189 (1985); <u>Surgicenters</u>, 601 F.2d at 1016. At best, Plaintiff's Farsi-English term "Yellow Page-e Iranian" directly describes the service

to which the mark is affixed, i.e., an Iranian yellow pages.  <u>See</u> <u>Park 'N Fly</u>, 718 F.2d at 330 (finding "Park 'N Fly" to be descriptive because "'park and fly' is a clear and concise description of a characteristic or ingredient of the service offered – the customer parks his car and flies from the airport").  Plaintiff's term "Yellow Page-e Iranian" used in the context of telephone directory services is generic, or at best, a merely descriptive mark.

**C.   <u>"Markaz-e Etelaate Iranian" and "Iranian Information Center"</u>**

24.  For similar reasons, Plaintiff did not meet its burden to show that its unregistered term "Markaz-e Etelaate Iranian," which translates to "Iranian Information Center," is not generic, regardless of whether the term is given its English meaning or its Farsi meaning. "Iranian Information Center" describes what Plaintiff's service is: an information center for Iranians.  Plaintiff failed to produce evidence of nongenericness that is sufficient to rebut even modest evidence of genericness, and Plaintiff's own testimony stated that anyone can use the term "information center." There is no evidence as to what potential customers understood or identified by the mark

"Iranian Information Center."  Plaintiff failed to show that the consuming public connects the term "Iranian Information Center" with the server, rather than the service.  <u>Surgicenters</u>, 601 F.2d at 1017.  Accordingly, "Iranian Information Center" and "Markaz-e Etelaate Iranian" are generic.

25.  Because "Yellow Page-e Iranian," "Iranian Information Center, and "Markaz-e Etelaate Iranian" are generic and not protectable, Plaintiff is not entitled to judgment for trademark infringement or unfair competition under federal or California law.

**D.    <u>No Secondary Meaning</u>**

26.  Even assuming "Yellow Page-e Iranian" and "Iranian Information Center" are merely descriptive (rather than generic), Plaintiff's terms are the feeblest of descriptive marks, and Plaintiff did not meet its burden to show that the marks acquired secondary meaning.  The only evidence Plaintiff presented regarding secondary meaning included: (1) Plaintiff's testimony regarding the exclusivity of Plaintiff's use of the claimed marks from 1981 until 1994; (2) Plaintiff's testimony and the front covers of Plaintiff's 1989, 2004, 2006, and 2008 directories stating that the

circulation of Plaintiff's directories were in the tens of thousands each year; (3) and Plaintiff's testimony that he advertised the marks on TV, radio stations, newspapers, magazines, trade shows, special events, and through email blasts.  Plaintiff's uncorroborated and self-interested testimony is entitled to little weight, and does not establish that the terms "Yellow Page-e Iranian" or "Iranian Information Center" acquired secondary meaning.  <u>Filipino Yellow Pages</u>, 198 F.3d at 1152.  This testimony does not show that "in the minds of the public, the primary significance of [the] mark[s] is to identify the source of the product rather than the product itself."  <u>Grupo Gigante SA De CV v. Dallo & Co., Inc.</u>, 391 F.3d 1088, 1095 (9th Cir. 2004).  Plaintiff did not present any strong evidence of the following factors: consumer perception or direct consumer testimony, amount of advertising, amount of sales and number of customers, established place in the market, proof of intentional copying by defendant, or actual confusion.  <u>See Filipino Yellow Pages</u>, 198 F.3d at 1151 (listing factors used to establish secondary meaning).

**E.**   **No Likelihood of Confusion**

27.   Even assuming, *arguendo*, that Plaintiff established the validity of its asserted marks in "Yellow Page-e Iranian" and "Iranian Information Center," Plaintiff did not meet its burden to show that Defendants' use of the marks is likely to cause confusion about the source of Plaintiff's or Defendant's products. <u>Brookfield</u>, 174 F.3d at 1053 ("The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products."). The fact that Ketab and Melli both provide information directory services and are competitors of each other, without more, does not establish a likelihood of confusion. The weakness of Plaintiff's alleged marks, and Plaintiff's failure to adduce evidence regarding actual confusion, Defendant's intent, marketing/advertising channels used by both Plaintiff and Defendant, and the degree of care likely to be exercised by consumers do not support a likelihood of confusion. Defendant's use of the Farsi words for "Iranian information center" in its television advertising, and use of the term "yellow page-e Iranian" as part of a longer

1    phrase on the cover of its Melli Yellow Pages

2    directory and in its television advertising, is

3    not similar to Plaintiff's marks, and is not

4    likely to cause confusion about the source of

5    the goods.

6    **F.   No Injunctive Relief is Warranted**

7    28.   Trademark law gives federal courts the "power

8          to grant injunctions, according to the

9          principles of equity and upon such terms as the

10         court may deem reasonable." La Quinta

11         Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762

12         F.3d 867, 880 (9th Cir. 2014) (quoting 15

13         U.S.C. § 1116).  A permanent injunction may be

14         entered where the plaintiff shows: "(1) that it

15         has suffered an irreparable injury; (2) that

16         remedies available at law, such as monetary

17         damages, are inadequate to compensate for that

18         injury; (3) that, considering the balance of

19         the hardships between the plaintiff and

20         defendant, a remedy in equity is warranted; and

21         (4) that the public interest would not be

22         disserved by a permanent injunction." Id.

23         (quoting eBay Inc. v. MercExchange, L.L.C., 547

24         U.S. 388, 391 (2006)).  In exercising its

25         equitable discretion to decide whether to grant

26         or deny a permanent injunction, the district

27         court must consider the unique circumstances of

28

1    each case.  _Id._

2    29.  The Court denies Plaintiff's request for

3         injunctive relief because "[t]o allow trademark

4         protection for generic terms, i.e., names which

5         describe the genus of goods being sold, even

6         when these have become identified with a first

7         user, would grant the owner of the mark a

8         monopoly, since a competitor could not describe

9         his goods as what they are."  _Surgicenters_, 601

10        F.2d at 1017 (quoting _C.E.S. Publ'g Corp. v._

11        _St. Regis. Publ'ns, Inc._, 531 F.2d 11, 13 (2d

12        Cir. 1975)).

13   30.  However, even if Plaintiff had shown

14        infringement of valid and protectable marks,

15        Plaintiff did not prove through competent,

16        credible evidence, any basis on which to find

17        irreparable harm from Melli Defendants' use of

18        the "08" Mark, "Yellow Page-e Iranian," or

19        "Iranian Information Center" and its Farsi

20        translation.  Plaintiff did not meet its burden

21        to demonstrate irreparable harm, and Plaintiff

22        is not entitled to a permanent injunction.  _See_

23        _Herb Reed Enters., LLC v. Fla. Entm't Mgmt,_

24        _Inc._, 736 F.3d 1239, 1249 (9th Cir. 2013).

25   In accordance with Rule 52(c), Melli Defendants'

26   Motion for Judgment as a Matter of Law is **GRANTED**.  The

27   Court finds against Plaintiff on its claims for

28

trademark infringement and unfair competition, and denies all of Plaintiff's requested relief. Judgment shall be entered for Melli Defendants.

   **IT IS HEREBY ORDERED** that Melli Defendants are directed to file a proposed judgment on or before **May 25, 2016**.

**IT IS SO ORDERED.**


DATED: May 18, 2016            s/ RONALD S.W. LEW

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge